LAW OFFICE OF JULIO E. PORTILLA, P.C.
Julio E. Portilla, Esq.
380 Lexington Avenue, Suite 446
New York, NY 10168
(212) 365-0292
(212) 365-4417fax

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re

RALEG MARCY GROUP INC

                Debtor.

Case No: 25-43697
Chapter 11

# DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO WILMINGTON SAVINGS FUND SOCIETY, FSB'S MOTION TO DISMISS NUNC PRO TUNC

## PRELIMINARY STATEMENT

1. Debtor Raleg Marcy Group Inc. (the "Debtor") respectfully submits this memorandum of law in opposition to the motion (the "Motion") filed by Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Trustee for Residential Mortgage Aggregation Trust (the "Lender"), seeking dismissal of this Chapter 11 case with prejudice, nunc pro tunc to a date prior to the foreclosure sale held on July 31, 2025, pursuant to 11 U.S.C. §§ 707(a), 362(d), and 1112(b). The Motion rests on unsubstantiated allegations of bad faith and should be denied in its entirety.

2. This case was commenced in good faith to safeguard the value of the Debtor's principal asset—a multi-family residential property located at 829 Marcy Avenue, Brooklyn, New York 11216 (the "Property")—and to enable an orderly reorganization. The Debtor has secured a binding commitment for refinancing in the amount of $1,999,900, which is positioned to facilitate satisfaction of the Lender's claim, as evidenced by a commitment letter dated August 10, 2025,

from Emerald Coast Capital (See **Exhibit "A"**: Commitment Letter). Furthermore, an independent appraisal report dated April 24, 2025 (effective as of the inspection date of April 19, 2025, and reflective of current market conditions), values the Property at $3,800,000 on an "as repaired" basis upon completion of planned renovations (See **Exhibit "B"**: Appraisal Report). These circumstances underscore the Debtor's substantial equity in the Property, the viability of a successful reorganization, and the availability of adequate protection for the Lender.

3. The Lender's request for nunc pro tunc dismissal is wholly unjustified, as it seeks to retroactively invalidate the automatic stay absent any demonstration of extraordinary circumstances warranting such equitable relief. The Debtor, now represented by counsel, has rectified any prior procedural shortcomings and is dedicated to advancing this case in good faith. For the reasons articulated below, the Motion should be denied.

## FACTUAL BACKGROUND

4. The Debtor owns the Property, a multi-family residential building located at 829 Marcy Avenue, Brooklyn, New York 11216 (the "Property")—to facilitate an orderly reorganization. The Property secures a commercial mortgage loan originally provided by New Silver Lending LLC and currently held by the Lender. After the loan matured, the Lender initiated foreclosure proceedings in state court, resulting in a Judgment of Foreclosure and Sale. A foreclosure auction is scheduled for July 31, 2025, at 2:30 p.m.

5. The Debtor previously filed a Chapter 11 petition (Case No. 1-25-41770-jmm) on April 10, 2025, to avert an earlier scheduled sale. That case was dismissed following the Court's grant of stay relief to the Lender on May 20, 2025. On July 29, 2025, the Debtor pursued emergency relief in the dismissed case to authorize a sale of the Property, which was denied on July 31, 2025. Subsequently, at 2:25 p.m. that day, the Debtor filed the present petition pro se to

engage the automatic stay and preserve the Property for reorganization purposes. Notwithstanding the filing, the foreclosure sale proceeded at 2:30 p.m., reportedly without knowledge of the petition, yielding a third-party bid of $1,760,000—substantially below the Property's appraised value.

6. Since the petition date, the Debtor has taken proactive steps to propel its reorganization forward. On August 26, 2025, the Debtor's counsel filed a Notice of Appearance, affirming professional representation in these proceedings. Critically, the Debtor has procured a binding commitment letter from Emerald Coast Capital, dated August 10, 2025, for financing totaling $1,999,900, consisting of $1,750,000 for refinancing and $249,900 as a rehabilitation holdback. This one-year, interest-only loan bears a rate of 9.75% with no prepayment penalty. The commitment confirms completion of all necessary third-party due diligence, including title review, appraisal, and underwriting, with closing contingent only upon receipt of a payoff statement from the Lender and this Court's approval of post-petition financing. Additionally, the attached appraisal report, prepared by an independent certified appraiser, values the Property at $3,800,000 on an "as repaired" basis following renovations that will enhance its income-producing potential as a three-family dwelling. The Lender's claim, as of April 10, 2025, approximates $2,236,512.69—a figure secured by the committed financing, the Property's equity, and projected post-renovation value.

## ARGUMENT

### I. THE PETITION WAS FILED IN GOOD FAITH, AND DISMISSAL UNDER 11 U.S.C. § 1112(b) IS UNWARRANTED.

7. Dismissal of a Chapter 11 case for "cause" pursuant to 11 U.S.C. § 1112(b) demands a determination of bad faith based on the totality of the circumstances. *See* In re C-TC

9th Ave. P'ship, 113 F.3d 1304, 1311 (2d Cir. 1997) (mandating findings of both subjective bad faith and objective futility to justify dismissal). Relevant factors encompass the debtor's reorganization prospects, the filing's timing, and whether it advances a valid bankruptcy objective. Id. The movant bears the burden of establishing cause by a preponderance of the evidence. *See* Bal Harbour Club, Inc. v. AVR Bal Harbour, Inc., 316 F.3d 1192, 1196 (11th Cir. 2003) (cited approvingly in Second Circuit jurisprudence); see also In re SGL Carbon Corp., 200 F.3d 154, 162 (3d Cir. 1999) (applying similar standard). Here, the Lender falls short of this threshold, as the Debtor's filing reflects a bona fide intent to reorganize, buttressed by tangible indicia of feasibility.

8. The Lender's contention that the filing's timing—minutes before the auction—evinces bad faith is unpersuasive. Such timing signifies a legitimate endeavor to protect the estate's core asset from an undervalued forced sale, not abuse. *See* In re New York Classic Motors, LLC, No. 21-10670, 2021 WL 2283770, at *3-4 (Bankr. S.D.N.Y. June 4, 2021) (deeming a filing in good faith to preserve assets amid financial strain and rejecting dismissal where reorganization optimized creditor recoveries; noting that financial distress precipitating a filing is often indicative of good faith rather than bad faith). The third-party bid of $1,760,000 falls $1,040,000 short of the Property's appraised "as repaired" value of $3,800,000, as determined through reconciled sales comparison ($3,800,000), income ($3,900,000), and cost ($3,945,900) approaches in the attached appraisal. Permitting the sale to proceed would erode estate value, prejudicing all creditors, including the Lender. The Debtor's prior case, though dismissed, does not denote serial misconduct; the current filing ameliorates earlier issues, with counsel now engaged and refinancing secured. *See* In re Rubin Fam. Irrevocable Stock Tr., No. 13-72193-dte, 2013 WL 6204143, at *11 (Bankr. E.D.N.Y. Nov. 21, 2013) (denying dismissal despite bad faith claims,

absent subjective intent to impede creditors or objective futility, where debtors proffered a plan for full repayment).

9. The Emerald Coast Capital commitment letter provides strong evidence of the Debtor's reorganization potential. The $1,999,900 facility will help satisfy the Lender's claim through refinancing and fund renovations to reach the Property's $3,800,000 "as repaired" value. This is not a stagnant single-asset case; the Debtor plans to propose a refinance-supported plan, possibly within 90 days. *See* In re C-TC 9th Ave. P'ship, 113 F.3d at 1311 (requiring objective futility, i.e., no realistic reorganization prospect, for bad faith dismissal); accord In re Bal Harbour Club, Inc., 316 F.3d at 1195 (reversing dismissal where debtor showed reorganization potential).

10. Moreover, nunc pro tunc dismissal constitutes an exceptional remedy, confined to instances of fraud, jurisdictional voids, or comparable egregious conduct—none of which obtains here. *See* In re 15375 Mem'l Corp., 589 F.3d 605, 624 (3d Cir. 2009) (limiting nunc pro tunc relief to extraordinary cases); *see also* In re Casse, 198 F.3d 327, 336 (2d Cir. 1999) (affirming denial of retroactive relief absent compelling equities). The Lender's interest in evading sale unwind does not suffice to abrogate the automatic stay, which vested upon filing. Granting such relief would subvert Bankruptcy Code safeguards and condone potential stay violations. The Lender's citation to In re Soares, 107 F.3d 86 (1st Cir. 1997), is inapposite, as that case involved patent abuse not evident here.

## II. THE ROOKER-FELDMAN DOCTRINE IS INAPPLICABLE, AND STAY RELIEF UNDER 11 U.S.C. § 362(d) SHOULD BE DENIED.

11. The Lender erroneously invokes the Rooker-Feldman doctrine to compel stay relief, positing that this Court cannot "review" the state foreclosure judgment. This doctrine precludes federal courts from entertaining actions by state-court losers effectively appealing state

judgments. *See* Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (narrowing doctrine to cases where federal plaintiff complains of injury caused by state judgment). However, bankruptcy courts routinely oversee matters implicating foreclosed properties without doctrinal infringement, as the automatic stay operates prospectively without nullifying antecedent judgments. *See* In re Gruntz, 202 F.3d 1074, 1083 (9th Cir. 2000) (en banc) (automatic stay supersedes Rooker-Feldman concerns).

12. The Debtor does not challenge the validity of the foreclosure judgment but attempts to reorganize under Chapter 11, possibly curing arrears through a plan. *See* In re William Curtis Wood, No. 24-11718, 2025 WL 2226503, at *7-8 (Bankr. S.D.N.Y. May 13, 2025) (Rooker-Feldman does not remove bankruptcy jurisdiction, as stay-violating state actions are void ab initio). Stay relief under 11 U.S.C. § 362(d) requires "cause," such as inadequate protection or bad faith—neither is shown. The Property's $3,800,000 appraised value, which exceeds the Lender's claim, along with committed refinancing, provides strong protection. *See* In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990) (listing factors for "cause," none support relief here).

### III. THE LENDER'S INTEREST IS ADEQUATELY PROTECTED UNDER 11 U.S.C. § 362(d)(1).

13. Stay relief for lack of adequate protection requires evidence of collateral value erosion or immediate peril. *See* United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 370 (1988). The Lender proffers none, resorting to conjecture. The appraisal attests to a $3,800,000 "as repaired" value, with renovation funding via the $249,900 holdback ensuring value accretion. This equity cushion, alongside imminent refinancing, sufficiently protects the Lender. *See* In re Bermec Corp., 445 F.2d 367, 369 (2d Cir. 1971) (equity cushion

constitutes adequate protection); In re Chintan Singh, No. 25-10431, at *4-5 (Bankr. S.D.N.Y. Aug. 11, 2025) (denying relief where appraisal-based equity exceeded claim). No interim payments or supplemental security are warranted.

## CONCLUSION

14. For the foregoing reasons, the Motion should be denied in its entirety. The Debtor respectfully requests a hearing if necessary and such other relief as the Court deems just and proper.

Dated: August 26, 2025
      New York, NY

Respectfully submitted,

**LAW OFFICE OF JULIO E. PORTILLA, P.C.**

*/s/ Julio E. Portilla*
Julio E. Portilla, Esq.
380 Lexington Avenue, Suite 446
New York, NY 10168
(212) 365-0292; (212) 365-4417 fax
jp@julioportillalaw.com